```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___
MALINDER SLAUGHTER,

                               Plaintiff,                  05-CV-0493

                                    v.                         **DECISION**
                                                                           **and ORDER**

JO ANNE B. BARNHART, Commissioner
of Social Security

                               Defendant.
___

## **INTRODUCTION**

Plaintiff Malinder Slaughter ("Slaughter"), brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.) claiming that the Commissioner of Social Security improperly denied her application for disability insurance and supplemental income security benefits.[1]  Specifically, Slaughter alleges that the decision of an Administrative Law Judge ("ALJ") was erroneous and not supported by the substantial evidence contained in the record.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Slaughter also moves for judgment on the pleadings and seeks reversal and requests the Court to grant monthly benefits to her, or, in the alternative, remand the action to the defendant for further proceedings. For the reasons stated herein, the case is remanded to the Commissioner for calculation of benefits.

---

[1] This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated April 5, 2007.

**BACKGROUND**

On April 7, 2003, Slaughter, then aged 45 years old, applied for Social Security disability benefits and supplemental income security claiming that she became disabled on June 27, 1997 due to an injury to her lower back.[2] Slaughter's application was initially denied, and thereafter, she requested an administrative hearing before an ALJ which took place on October 7, 2004. In a decision dated October 29, 2004, the ALJ found that although Slaughter suffered from a combination of severe impairments, including lumbar and cervical disorder, obesity and diabetes mellitus, plaintiff's impairments did not meet or equal a Listing. T. 32. He then determined that plaintiff retained the residual functional capacity ("RFC") to lift/carry 10 pounds occasionally; stand/walk 2 hours of an 8-hour workday; sit 8 hours of an 8-hour workday; sit/stand option at 15-30 minute intervals; never climb ladders, ropes, or scaffolds; no more than occasionally climb stairs, kneel, crouch, or crawl; and no overhead reaching. Id.

The ALJ also found that plaintiff could not do her past relevant work, but that she could perform other work in the economy, based upon findings, which matched his first hypothetical question and the Vocational Expert's ("VE") testimony.[3] T.32. Moreover, the ALJ adopted the limitations recommended by Dr. William Capicotto (treating orthopedist)

---

[2]Slaughter tried to return to work on July 26, 1997 but had to stop again due to her disability on July 29, 1997 and has not worked since that time. T. 65. From 1988 to 1991 she worked at agencies as a home health aide and from 1991 to 1997 she was a Nurse's Assistant at a nursing home. In 1996 and 1997 she held a second job.

[3]The ALJ's hypothetical question asked her to assume that plaintiff had the ability to lift/carry ten pounds occasionally, stand/walk for less than two hours; could sit for eight hours but required a sit or stand option at intervals of 15 to 30minutes; could never climb ladders, ropes or scaffold, balance or reach overhead; and could occasionally climb stairs, bend, kneel, crouch and crawl. T. 280-281.

and Dr. Samuel Balderman (one-time consultative examiner), and most of the limitations posed by Dr. Eugene Gosy (treating pain specialist). T. 27. However, the ALJ rejected limitations posed by Dr. Gosy which the VE testified would be disabling, that is, all postural activity, four absences per month, or constant interruption of attention and concentration. Id. He discounted Dr. Gosy's assessment that plaintiff would likely miss four days of work per month because she obtained treatment with less frequency. T. 28. Further, the ALJ discounted plaintiff's statements concerning her pain in part, because the May 8, 2004 lumbar MRI showed no spinal or foraminal stenosis. T. 28. Moreover, the ALJ indicated that plaintiff's credibility was "only fair" because her testimony was not supported by the medical evidence, and because she had earned above $6,000 annually in only five years. T. 30.

The ALJ found that although plaintiff had impairments that are considered "severe" based on the requirements in Regulations 20 CFR §§ 404.1520(B) and 416.920(b), she was not disabled within the meaning of the Act and thus not entitled to Disability Insurance Benefits, or eligible for Supplemental Security Income payments. Slaughter's request for review of the ALJ's decision by the Appeals Council was denied on May 18, 2005, and on July 15, 2005, plaintiff filed this action.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings

are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). Defendant asserts that her decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules. Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the pleadings, the Court is convinced that "plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on pleadings may be appropriate. Conley v. Gibson, 355 U.S. 41, 45 (1957).

## II.   **Plaintiff's Medical History**

On October 26, 1998 an MRI showed right paracentral disc herniation at L4-L5 and wear and tear changes at L5-S1. T.165.[4] Throughout 1998 and early 1999, plaintiff continued to suffer severe pain in her back and right leg; had difficulty getting in and out of a chair, and walked with a limp. T. 206-207. Dr. Capicotto advised her that surgery should remove the majority of her pain. Due to continued excruciating back pain, Slaughter opted for surgery and on May 21, 1999 Dr. Capicotto performed surgical removal of two discs between vertebraes L4-L5 and L5-S1, and fusion of L4-L5 and L5-S1 with bone grafts and instrumentation. T. 160-163. On November 19, 1999 Slaughter still had residual back and leg pain, limited range of motion and tenderness at L4-L5. X-ray findings showed fusion at L5-S1 but delayed union at L4-L5. T. 178.

In January 2000, Dr. Capicotto expressed concern regarding plaintiff's ongoing soreness and lack of x-ray confirmation of fusion. Dr. Capicotto noted on February 24, 2000 that Slaughter was "miserable with pain in her back and legs," and could not get in and out of a chair on her own due to lack of strength in her legs and buttocks. He ordered a CT scan and reported that plaintiff was in "much too severe pain," had clinical evidence of lack of fusion, and remained totally disabled. T. 175. A lumbar spine CT scan in March 2000 showed possible loosening of the L4-L5 and incomplete fusion at both L4-L5 and L5-S1. On April 7, 2000, Dr. Capicotto noted that plaintiff continued to suffer pain 24 hours a day, 7 days a week and that incomplete or very slow fusions at L4-L5 and L5-S1

---

[4]Slaughter's disability results from her back injury and to some extent from neck injuries she received in a motor vehicle accident on August 20, 1998. T. 153-157.

were the "explanation for [plaintiff's] chronic low back and bilateral leg pain." By April 2001, the doctor reported that complete x-rays showed questionable fusion at L4-L5. He opined that Slaughter may need further surgery. On October 18, 2001 Dr. Capicotto reported that Slaughter had gone on to "an established pseudoarthrosis/nonunion" and that plaintiff "continues to suffer severe pain that is worsening with time."

Plaintiff had sharp, burning pain and in September 2004 began seeing Dr. Gosy, a pain specialist. T. 244. Dr. Gosy diagnosed low pain with S1 causalgia.[5] Plaintiff also underwent a lumbar sympathetic block on September 14, 2004 and her prognosis was guarded. The pain rated 5 to 10 out of 10. Dr. Gosy opined that plaintiff could stand no more than thirty minutes at a time and a total of less than two hours in an 8-hour day, and could sit a total of at least six hours per day. He also indicated that Slaughter must be able to shift positions at will between sitting and standing, and must take unscheduled breaks every two hours during an 8-hour work day. He also noted that she could lift up to 10 pounds occasionally and less than 10 pounds frequently. Dr. Gosy reported that plaintiff's impairments were reasonably consistent with her symptoms and that she would have constant interference from pain with attention and concentration necessary to perform simple tasks. For instance, Slaughter should never stoop, twist, crouch, or climb; and that her symptoms are likely to produce good and bad days such that they would make her absent from work approximately four days per month.

---

[5] Burning pain often accompanied by tropic skin changes, due to injury of a peripheral nerve. See Dorland's Illustrated Medical Dictionary, p. 649, 28th ed., 1994.

In January 2005, Dr. Gosy gave a new diagnosis of neuralgia/neuritis/radiculitis. He reported that Slaughter's "disability status is maintained," and that "[s]he is afflicted with lumbar pain and causalgia of the RLE in the aftermath of surgery ... the pain continues ... she states having bouts of crying spells due to her high pain levels and her lack of pain control ... [and a] difficult time standing, sitting or walking because of the pain in her LS area as well as the radicular pain in her lower extremities." T. 249. Moreover, Slaughter's lower extremity strength was decreased at 3/5 on the left and 4/5 on the right; and she had decreased sensation to pinprick in the right leg. Plaintiff also saw Dr. Balderman for the Commissioner on June 2, 2003. After performing a single examination on Slaughter, Dr. Balderman diagnosed non-union lumbar spine and opined that plaintiff's prognosis was guarded. He indicated that plaintiff had marked limitations in bending, lifting and carrying.

### III. **Plaintiff's Non-Medical Evidence**

Plaintiff testified that her pain was constant burning and sometimes pinching, which was located in her upper and lower back and radiating down her legs, mostly down her right leg, constantly with varying intensity, aggravated with activity. T. 272-273. She indicated that her back surgery did not relieve any of her pain symptoms, and in fact became worse. T. 274. Neither the nerve block administered by Dr. Gosy relieved the pain, nor did the Neurontin prescribed by Dr. Gosy relieve nerve pain. T. 264, 274. In addition, since June 2004, Slaughter has used a cane, which she obtained through her doctor due to her leg giving out. In fact, she uses the "cane all the time" whether inside or outside the house in order to

move around. T. 257-258. She was able to walk approximately one block, slowly, with the cane but has fallen many times. T. 276.

Plaintiff lives with her six year old son. Her pain prevents her from performing normal daily activities including attending her son's school field trips, getting him ready for school, doing the laundry, grocery shopping and taking care of her yard. T. 269-271. Slaughter testified that she can no longer cook and her family helps her take care of her son. She used to be actively involved in church organizations including cleaning the church and tending to the sick, which she can no longer do. Id. Currently, the pain in her back affects her concentration but she tries to read or do puzzles. Slaughter has difficulty holding objects, she constantly drops things and she cannot lift more than a gallon of milk. T. 266-267. Further, she uses a device provided by the hospital that acts like an extension of her arm so she can avoid bending.

Based on the ALJ's first hypothetical question to the VE, the VE opined that Slaughter could do sedentary, unskilled jobs as a cashier, small product assembler and product inspector. T. 281. Moreover, on cross-examination, the VE conceded that based on plaintiff's testimony and her symptoms, she would be unable to perform the duties of sedentary unskilled job as a cashier.[6] In a separate hypothetical, the ALJ asked the VE to assume plaintiff's testimony to be deemed fully credible, and the VE opined that plaintiff could not even do sedentary work. Further the VE testified that either one or all of three factors would determine

---

[6]Questions by Plaintiff's Counsel Perot to VE Kelly:
Q: Based on what you've heard from the Claimant's testimony this morning with her self-description of her symptoms, do you feel that she could perform the job that you identified?
A: I kind of answered that with the judge's hypothetical number two in that, no, there would not be any occupation she could perform. T. 288.

plaintiff to be disabled and unable to perform any work that exists in the national economy: (1) if sitting and standing abilities total less than eight hours; (2) if the individual was absent four times per month; and (3) if the individual could not pay attention and maintain concentration sufficient to perform even simple tasks. T. 282-283. The VE indicated that "[a]ny or all three" would disable an applicant. T. 283.

The ALJ was selective in accepting as credible those portions of plaintiff's testimony, which would support his reliance upon the VE's opinions that there existed jobs in the national economy which plaintiff was capable of performing. For instance, one of the ALJ's hypothetical questions to the VE assumed that plaintiff could walk and stand <u>less than two hours</u> per day. The Dictionary of Occupational Titles ("DOT") provides that sedentary jobs require walking and standing "occasionally." The term "occasionally" is defined in the DOT as up to one third of the work day. <u>See</u> Social Security Ruling 83-10.[7] However, all of the occupations recited by the VE were described by her as sedentary. Whether sedentary or light duty work, the plaintiff was incapable of performing either since her treating physicians consistently opined that she was disabled and unable to perform any work related activities.

Moreover, the VE conceded on cross-examination that there were no sedentary unskilled cashier jobs in the DOT. T. 281, 284. The VE explained that plaintiff could not perform a cashier's job because it required standing for longer than plaintiff was capable and therefore she would be considered disabled. Further, the hypothetical fact pattern selected by

---

[7]Social Security Rulings are binding on all components of the Social Security Administration. <u>See</u> 20 C.F.R. § 402.35(b)(1).

the ALJ upon which the VE's opinion was based failed to take into account all of plaintiff's limitations. To constitute substantial evidence supporting a hearing decision, vocational expert opinion must present all of the applicant's limitations and there must be substantial evidence to support the assumptions upon which the vocational expert bases their opinion. See Dumas v. Schweiker, 712 F.2d 1545, 1553-1554 (2d Cir. 1983) (quoting Aubeuf v. Schweiker, 649 F.2d 107 (2d Cir. 1981)). Here, it is clear that the ALJ asked the VE to "assume a particular physical capability on the part of the claimant ... where there was no evidence to support the assumption underlying the hypothetical." See Dumas, 712 F.2d at 1554.

The ALJ's decision to ignore relevant portions of Dr. Gosy's opinion (her treating pain specialist) was unsupported by substantial medical evidence in the record. On cross examination, the VE conceded that if Dr. Gosy was correct, plaintiff was disabled and could not work. T. 282-283. The VE also agreed that if plaintiff was credible she should be found disabled, but the ALJ improperly discounted her credibility ("the claimant's credibility is only fair" T. 30) and in addition, as documented in the medical record, failed to include in his hypothetical to the VE plaintiff's need for a cane or other assistance. T. 229, 281. The ALJ's finding that the claimant's credibility was "only fair" is not substantiated by the medical evidence in the record.

### IV. **The Commissioner's decision to deny Plaintiff benefits was erroneous based on substantial evidence in the record**.

The ALJ is required to give the opinions of the claimant's treating physicians controlling weight if the opinions are well-supported by the medical evidence in the record as a whole and are not inconsistent with

substantial evidence in the record as a whole. 20 C.F.R. § 404.1527(d)(2). Further, when evaluating a claim, he must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and ⋯ educational background, age and work experience." Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir.1983) (quoting Miles v. Harris, 645 F.2d 122, 124 (2d Cir.1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir.1993). Moreover, even though an ALJ is free to choose between properly submitted medical opinions, he is not free to set their expertise against that of a physician who has submitted an opinion.  See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). In addition, the ALJ must give good reasons in his decision as to weight afforded the treating physicians' opinions. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).

Here, the ALJ improperly discounted the opinion of Dr. Gosy, a pain specialist and treating physician, and his reasons for disregarding Dr. Gosy's opinion were not supported by substantial evidence. The ALJ disagreed that plaintiff would have to miss four days of work per month simply because she did not seek medical treatment that often. However, the ALJ cited no reports of the treating physicians to support that conclusion.  In view of plaintiff's extensive surgery, failed fusion, and extensive treatment, the absence of more frequent treatment does not necessarily support the ALJ's conclusion that plaintiff was not disabled.

See Shaw v. Carter, 221 F.3d 126, 133 (2d Cir. 2000). Further, the ALJ's characterization of plaintiff's lumbar flexion of 30 as "substantial" is not medically accurate since normal is 90 degrees. Moreover, the ALJ emphasized only those facts from the voluminous medical evidence, out of context, in order to support his conclusion that Slaughter was not disabled. For example, the ALJ relies on a September 30, 2000 opinion of Dr. Capicotto, which was made in a very brief interlude of optimism that Slaughter's fusion would heal. T. 172. However, six months later, when it was clear that the fusion failed, Dr. Capicotto revised his opinion, changing the degree of plaintiff's disability from "moderate" to "marked." T. 171. Thus, it was incorrect for the ALJ to rely upon an opinion, which Dr. Capicotto obviously no longer held and later modified.

## V. The ALJ erred by not applying the proper standard in assessing Slaughter's credibility.

The ALJ found plaintiff's "credibility is only fair in that her allegations appear to be somewhat exaggerated and not supported by the medical evidence." T. 30. The ALJ's residual functional capacity finding based on an adverse credibility determination with respect to plaintiff's subjective pain complaints was not supported by substantial evidence. Janas v. Barnhart, 451 F.Supp.2d 483 (W.D.N.Y.,2006). Although Slaughter had many subjective symptoms, the record is devoid of any suggestion by her treating physicians that she did not have disabling pain or that her pain was not reasonably related to her back problems. No treating physician ever questioned plaintiff's credibility regarding her complaints of pain for which she was prescribed strong pain medications. The medical record in general does not support the ALJ's assessment that plaintiff's allegations were exaggerated. T. 30. In fact, the records are replete with

references to Slaughter's pain as "severe" or "excruciating." The ALJ referred to no medical evidence, which suggested that plaintiff was exaggerating her symptoms. In determining that plaintiff remained able to perform a "significant range of sedentary work" (T. 32), the ALJ discredited plaintiff's testimony and supporting medical evidence supporting her subjective claim of pain.

While a plaintiff's subjective complaints are not alone sufficient to support a finding of disability, such complaints must be accorded weight when they are accompanied by "evidence of an underlying medical condition" and an "objectively determined medical condition [which is] of a severity which can reasonably be expected to give rise to the alleged pain." Cameron v. Bowen, 683 F.Supp. 73, 77 n. 4 (S.D.N.Y.1987). Here, significantly absent from the ALJ's decision is any discussion regarding the disabling effect of plaintiff's injuries, which is supported by objective, medical evidence in the record.

Further, the Second Circuit has observed that "ALJs are specifically instructed that credibility determinations should take account of 'prior work history,' " and that "a good work history may be deemed probative of credibility." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir.1998) (citing 20 C.F.R. § 416.929(c)(3); and Social Security Ruling 96-7p, 61 Fed. Reg. 34, 483, at 34, 486 (1996)). See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."). In the instant case, the ALJ, failed to adequately credit plaintiff's work history, consisting of working two jobs, running a household and performing extensive community service through her church, as probative

of plaintiff's credibility regarding claim of disability. See <u>Rivera</u>, <u>supra</u>.

The ALJ's wholesale discrediting of Slaughter's subjective complaints strongly suggests the ALJ found it necessary to discredit such complaints to support his conclusion that plaintiff was not disabled and is contrary to the Second Circuit's reminder that "'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983) (quoting <u>Gold v. Secretary of Health, Educ. and Welfare,</u> 463 F.2d 38, 41 (2d Cir.1972). The ALJ's decision clearly shows that he felt plaintiff was not credible. However, substantial objective medical evidence in the record from plaintiff's treating physicians clearly supports the finding that plaintiff's symptoms of pain were credible.

### CONCLUSION

For the reasons set forth above, I find there is substantial evidence in the record to support plaintiff's claim of disability. I therefore grant plaintiff's motion for judgment on the pleadings and reverse the Commissioner's determination that plaintiff is not disabled. I remand this case to the Commissioner solely for the calculation and payment of benefits. Defendant's motion for judgment on the pleadings is denied.

ALL OF THE ABOVE IS SO ORDERED.

       s/ Michael A. Telesca  
         MICHAEL A. TELESCA  
         United States District Judge

Dated:    Rochester, New York  
          April 24, 2007